The Honorable Justice of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons on the 30th quarter's Honorable Court are admonished to draw near and give their attention as the Court is now sitting. Good morning, everyone. Welcome. Good morning, Judge Rovner. Good morning, everyone. Good morning. I'm sorry. My head is getting cut off here. Let me just make an adjustment to the camera so that you can see everything. Even cut off, it looks beautiful. All right. Our first case for argument this morning is Great American Insurance v. State Farm Insurance. Ms. Repas. Good morning. May it please the Court. My name is Gela Repas, and together with my co-counsel, Jordan Steinway, we represent Great American Insurance Company, the appellant, as the ASCME of Illinois Community College Risk Management Consortium, which I will refer to as ICRMIC. Maybe just the consortium. The consortium. Fine. So what I want to start out with really is sort of a compare and contrast between the consortium policy and the state farm policy, because these are two completely different insurance products. And I think, you know, once an explanation of how these are two totally different animals, once that foundation is laid, I think it will become very apparent exactly where the district court went wrong in its analysis in concluding that state farm had no duty to defend the underlying Freuder claim. So, first of all, with respect to the consortium policy, this is a highly individualized sort of atypical insurance policy. It's an ultimate net loss policy, and what that means, it's an indemnity-only policy, and the duty to indemnify applies only in excess of a retention and only after the insured member's liability has been adjudicated or otherwise resolved through settlement or compromise. And only at that point would a duty to indemnify ultimate net loss arise, meaning at the conclusion of the underlying case. Now, the definition of ultimate net loss includes defense costs, but there's a very important caveat here that it's part of the ultimate indemnity obligation. There's only an obligation to reimburse defense costs that are a consequence of covered liability. So there's no— Ms. Reffis, finish your thought, and then I do have a question. Please, please, go ahead. Well, no, you finish your thought. I'm sorry. I was simply going to make the point that any obligation that the consortium's policy has to pay defense costs is solely as a consequence of a covered liability, meaning that no obligation arises in real time to pay defense costs only at the end of the case, only if the insured is held liable, and only if that liability is covered. You may have just answered my question. Let me just make certain. Sure. Under your theory, what would have happened if Hamilton and the board had been found not liable for any loss? Who would have then paid the defense costs? In that event, the college, the College of DuPage, would have been responsible for their defense costs. So in the event there was no liability, let's say that all the claims were dismissed or Hamilton was ultimately exonerated, the consortium policy would owe no defense costs because you first have to have a covered liability before any defense costs can be tacked on to that obligation. And if the insured has no liability, there's no obligation to pay defense costs. Well, what about if the consortium had refused to front defense costs? What would have happened then under your interpretation of the insurance agreement? Well, in saying refused, I want to be very precise about that language because the consortium had no obligation to front defense costs because, as I said, their obligation, if any, doesn't arise until the end of the case. They exercise a discretionary right. It was a unilateral decision to advance defense costs against anticipated indemnity. So I want to be clear about that, that they had no obligation. It was a unilateral discretionary decision. But to answer your question, in the event that they had not exercised that discretion, then under the consortium's policy, I mean, that's how it's supposed to work. They're not going to get their defense costs reimbursed in real time. And this perfectly illustrates exactly why State Farm breached its duty to defend because they did have a $1 obligation to step up and defend Hamilton. And the mere fact that the consortium sort of fortuitously decided to – remember, they didn't know about State Farm at the time. The mere fact that they decided to exercise their discretion and step up and pay defense costs or reimburse defense costs, that kind of gave State Farm an out. They took an out.  Whether State Farm had a duty to defend or didn't either existed or didn't exist at the moment the claim was tendered. And they can't rely on something that happens after the fact to say, sorry, we don't have a duty. Well, let me just try and clarify something for myself. Are you saying in a sort of unusual manner that the consortium never has to pay defense costs? It's a conditional obligation. No, no, no. I think – forgive me. I'm going to sound like, you know, I'm in Congress or something, but I think that might be a yes or no. Are you saying that the consortium never has to pay defense costs? No. No. It has an obligation to pay defense costs as a consequence of a covered liability, which isn't assessed. And that duty doesn't arise, if at all, until the end of the underlying claim, until the claim is resolved. And that's why when the – But if the members are found liable, is it your argument that the excess coverage insurer has to pay defense costs? What do you mean by – who's the excess carrier, do you mean? Because there's – whether a policy – in this particular case, whether somebody's primary excess isn't really dispositive of who had the obligation. The fact is is that the consortium policy does not have and never has a duty to defend. They sometimes have a duty to indemnify defense costs at the end of the case, but they don't have a duty to defend, whereas State Farm absolutely does have a contractual duty to defend. So this is kind of where the district court got it wrong. The contractual duty to defend is limited to suits that are based on a loss not covered by another policy. Right, and that language makes absolutely no sense. Oh, it makes a tremendous amount of sense in the context of insurance law. Well, if you take – that language follows the duty to defend language, a loss to which this policy, this insurance applies. And then it tacks on this language of coverage. You can't determine coverage. I mean, the duty to defend is determined at the outset of the case based on the application. Understood, and under standard insurance law in every state, including – this is Illinois, right? Yes. Including Illinois. Okay. The duty to defend is determined at the outset of the case based on the potential of coverage. That's right. And so that's how this language worked. If the basis for the suit was a loss that was potentially covered by another policy, there's no primary duty to defend on the part of State Farm. Well, back up. The policy doesn't say potentially covered. But that's how insurance law works. And that's a gloss on every insurance policy by the insurance law of every state. Okay, I'll accept that true for purposes of this argument, even though that is redundant of the preceding language. But, okay, even if you read it as potential coverage, that's fine. The underlying claim was potentially covered. And we don't get into this dispute about who has – No, it's if it was potentially covered by another policy. Okay. Your policy was clearly implicated here, which takes the State Farm policy out of any duty to defend. Respectfully, Your Honor, that's not how it works. And the key to remember here is that the consortium policy does not have a duty to defend. But the language doesn't say if another policy contains a duty to defend. The policy says if another policy, the State Farm policy I'm referring to, that the duty to defend only exists or does not exist when the basis for the suit is a loss that is not covered by another insurance policy, but is covered by this policy. Okay, but potential coverage doesn't sort of just exist by itself. It has to be tethered to a contractual duty to defend. Because what that means is State Farm's trying to say is that we are not going to defend if anybody else – But if you're reading potential coverage into that language, that's the language of duty to defend, right? Because duty to defend is assessed by potential coverage. And if no other policy has a duty to defend, which the consortium policy did not have a contractual duty to defend, then State Farm – I think you're – maybe we're not communicating. The exclusionary clause, if you will, focuses on whether there's another policy that covers this loss or potentially covers this loss. If so, there's no duty to defend on the part of State Farm because it's an excess policy. I know you object to that terminology, but it is an excess policy. So if the loss at issue in the lawsuit is potentially covered by another policy, State Farm's duty to defend does not spring into being. And the reason for that is because somebody else is – let me give you an example. No, because the loss is covered by another policy, not because somebody else is covering, whether gratuitously or otherwise. If you mean potentially covered – if you mean covered, you can't – The loss is potentially covered. Not the duty to defend potentially exists in another policy, but that the loss – Okay. Okay. Let me give you an example to – the example that Judge Rogner said. What if the consortium had not exercised its discretion to – I'm not talking about duty to defend. Again, I don't think we're communicating here. I'm talking about the language of the State Farm policy, which focuses on whether the loss at issue in the underlying suit is covered or potentially covered by another policy. Right. If it is, then State Farm has no duty to defend. Right. It doesn't key off of whether another insurance policy has – or another insurance company has a duty to defend. It doesn't key off of whether another insurance company has a potential duty to defend or is doing so gratuitously to protect against a larger indemnification duty down the road, which is how your policy works. It fits into that third basket. It focuses on whether the loss at issue – that's the language here – is covered by another policy or potentially covered by operation of the gloss that insurance law puts on the duty to defend. Okay. In terms of when that question is determined at the outset of the case. And here, the loss was clearly potentially covered by the consortium's policy. Okay. And that kicks off any duty to defend that State Farm has. So that's how the district court analyzed this. I understand that we're not connecting on this. The district court said, well, because there was other insurance that ultimately covered the loss, therefore, at the outset, State Farm had no duty to defend. And, of course, that makes no sense because the district court just looked to see did we indemnify anything. And the court said, yes, and therefore, there's no duty to defend. Well, that's backwards. It doesn't work like that. Okay. Well, maybe you can answer the question that I'm asking rather than focusing on the district court's connect-the-dots analysis because it's de novo review. I understand. I'm just trying to illustrate the flaw in the analysis. And if you were going to add, you know, the language potentially covered under this policy and not potentially covered under another policy, the potential coverage, that's the standard for duty to defend. I understand your question. Right. And State Farm made a determination at the very outset of the case, granted unbeknownst to the consortium, but it made a determination that another policy potentially covered this loss, and so its duty to defend wasn't implicated. And that was, based on the language of its policy, a sound coverage determination for purposes of assessing a duty to defend. Except for that to happen, there's got to be two concurrent obligations at the same time. And then State, if that's the case, then State Farm can say, okay, well, there's another insurance policy that has a concurrent obligation, so I can go later in the priority of coverage. But you have to go back and look at the consortium policy. If there's no contractual duty to defend, there cannot possibly be a concurrent obligation. We're not talking about identification. We're talking about the duty to defend is assessed on the basis of whether the loss is covered by another policy, which can be done at the beginning of the case. Right. I understand that, but I understand we're not connecting. But to how I'd answer your question is to say that potential coverage, I understand your position. Potential coverage does not exist outside or has no meaning outside of a contractual duty to defend. And so without a contractual duty to defend, potential coverage doesn't give rise to any kind of concurrent obligation between the policies that would then allow State Farm to say, okay. But that's not how the State Farm policy is constructed. It focuses on the loss, not a concurrent duty to defend. Well, it says coverage. It says when the basis for the suit is a loss that is not covered, not when another policy has a duty to defend, a concurrent duty to defend. You're trying to rewrite the policy. No, no. I'm reading it literally. It says covered. It doesn't say potentially covered. It says covered, and you can't assess coverage until the end of the case. Okay. I understand we disconnect here, but I'm going to reserve the rest of my time for rebuttal. Thank you. Thank you. Mr. Kahn. Nothing like insurance law first thing in the morning. Everybody is excited. May it please the court, my name is Jacob Kahn. I represent the Defendant Appellee State Farm Fire and Casualty Company. The district court here correctly held under the facts presented here that State Farm did not owe a duty to defend under its umbrella policy. That decision should be affirmed. The defense provision in State Farm's umbrella policy is limited, and appropriately so, in view of the nature of its policy as an excess above all else umbrella policy. The defense provision says State Farm will provide a defense when the basis for the suit is a loss that is covered by this policy and, importantly, not covered by any other policy. So the only question this court has to answer is whether the relevant loss here was potentially covered or covered by another policy. And we submit there's only one answer here. It's the answer the district court gave, and it's the answer that Great American admits at page 7 of its reply brief. There was another policy here, the consortium's policy, and as a result, Great American's claims, all of which depend upon the existence of a duty to defend, they all fail. I want to address two topics this morning. The first is the arguments that State Farm is not making here, and the second is the proper interpretation of State Farm's policy. And I want to start out by pointing out that there are certain arguments referenced in Great American's reply that State Farm is not making here. The first is State Farm is not arguing that the consortium had a duty to defend. Judge Sykes, as you recognize, under State Farm's policy, it's not relevant whether the consortium or any other insurance carrier had a duty to defend. The only question that needs to be answered is whether there's another policy that covered or potentially covered the relevant loss. Great American also suggests that State Farm must have owed a duty simply because the consortium didn't owe a duty. And there's no law supporting that assertion. As the consortium, or as Great American recognizes, not every insurance policy contains a defense obligation. And if it does, the scope of that obligation turns on the language of the policy. And sometimes you then have a situation like here where there is no insurer that owed a duty to defend. Finally, State Farm is not arguing that its policy merely indemnifies defense costs or that it never owes a duty. It simply didn't owe one, in this case, under the circumstances presented here. And I want to move to the proper interpretation of State Farm's policy. There's no dispute here that State Farm's policy potentially covered the injury that the underlying plaintiff, Robert Bruder, claimed was caused by Katherine Hamilton's alleged defamatory statements. It was an alleged damage to Mr. Bruder's reputation. No dispute that that was potentially covered under State Farm's policy. But that's, again, only half of the inquiry under the defense provision. State Farm provides a defense only if the loss is covered by State Farm's policy and is not covered by any other policy. And State Farm demonstrated in its brief what Great American now admits at page 7, quote, the ICCRMC consortium policy potentially covered the underlying action. And that's more than sufficient for this court to affirm the district court's decision. Great American tries to avoid this result by presenting an unreasonable interpretation of State Farm's policy. And there are two relevant principles of contract interpretation that guide here. The first is that the court must construe the policy in view and taking into account of the type of insurance issued and the risks that have been undertaken. And that's important here because Judge Sykes, as you recognize, State Farm's umbrella policy is not a primary policy. It sits over and above all other insurance, and that's clear from the coverage grant. The coverage grant says if there's a cover loss, State Farm will pay damages if they, quote, exceed the retained limit. And the retained limit specifically includes, quote, the amount paid or payable by any other insurance policy. So the umbrella policy, in other words, is a limited undertaking. And as the Illinois and CASCO decision that both parties referenced in their briefs recognized, umbrella policies are a unique form of excess contract which always, always remains excess over and above all other applicable forms. So the defense provision needs to be interpreted in view of the limited undertaking here. The second relevant principle of contract interpretation here is that the court must construe the policy language, if at all possible, so as to give meaning to all of the language without rendering any of it meaningless. And Great American's argument on appeal violates both of these principles. It suggests the court should delete or judicially erase the second half of the defense provision, even though there's a perfectly reasonable construction that keeps the full provision intact, and even though this supposed fix, this deletion, would turn a limited defense provision in a limited umbrella liability policy into a primary defense obligation. The argument that Great American has put forth that the word covered in the defense provision means final indemnity, not potential indemnity, which is typically assessed at the outset of the case, is just not a reasonable interpretation. It would render the provision, the defense provision, meaningless. State Farm would never owe a duty because you can't, because by the time final indemnity is determined,  And of course that's not what the policy intended here. The policy intended to define the circumstances under which State Farm would provide a defense to its insured and to allow the parties to make that determination in real time. Great American, of course, recognizes this problem, which is why it proposes to delete the second half of the provision, but there's no justification for any rewriting of State Farm's policy. Instead, the policy can and should be read to give the words their plain and ordinary meaning in the context in which they appear, and they appear in the context of a defense provision in an umbrella policy. Your umbrella policy provided, in your view, for a defense if there was no substantive coverage at the primary level. Is that right? Sort of, because I will acknowledge here Great American, the consortium's policy, was not a traditional primary. That was my next question. Right. Your colleague on the other side said it was not a traditional policy, and that was my initial, when I started to look at this case, that was my initial feel, too. You concur in that. It's not a traditional policy, but at the end of the day, the interpretation of State Farm's defense provision doesn't say if there's primary coverage or if there's a duty to defend. If there's potential coverage under any policy, including an excess policy, State Farm's umbrella, again, sits above all of those, and therefore, there's no defense obligation. Could I just ask this, please? If the primary policy had not included a provision for any defense costs at all, is it your contention that Hamilton would just have to pay for those herself? Yes. The answer is yes. Of course, the consortium here had every interest and every reason to advance defense costs and step in because it was facing a significant potential liability based on the claims that had been alleged against the College of DuPage, all of the board members, and the board itself. I'm guessing that the college would pay those costs under the circumstances here. This is unusual. The consortium's policy is unusual because the colleges that belong to this consortium, the community colleges, self-insure to a certain extent, including to fill gaps like would have existed here if the underlying policy on the college's side had not stepped in to pay the underlying insurer. Who was the insurer? The underlying insurer was this consortium. The consortium. So is that a public body that accepts premiums from all member colleges? I'll let counsel explain their precise role. I think you're right that the college likely would have stepped in. We don't have in the record the employment agreement, but my guess is it included some sort of indemnification provision when there are claims that potentially. I mean, right. Why would anybody take any of these jobs on the boards of community colleges if the college wasn't going to pay defense costs and liability. Right. For any errors and omissions. Right. Mr. Connie, we talked about Great American's policy, the consortium's policy being unusual. How about your policy? Is it standard practice to issue an umbrella policy that would cover a situation, that would provide for representation if there is no insurance coverage for a particular matter at the primary level? Unfortunately, I can't answer whether this policy is standard and looks like other umbrella policies. It is designed, as you indicated, to sit over and above in the event there's no insurance that would apply here. I assume this is not a freestanding umbrella policy. It's tacked on to an auto insurance policy and a home insurance policy, as umbrella policies usually are. They're riders. As a requirement to get an umbrella policy, you need to satisfy the required underlying insurance. And I guess what I'm skeptical about is why State Farm didn't insist on better coverage at the primary level. It just seems strange to me. Most of the policies I've seen, the insistence is somewhat greater than it was here. Well, there is underlying insurance. There's an automobile policy, a homeowner's policy. I guess the argument here is there's a gap and that there's not a primary defamation policy. But the goal and the design of the policy is to be above all other coverage. So if there is other coverage that exists, then State Farm sits above that. And here there was other coverage, which works at the indemnity stage and at the defense stage. And this is not a risk that would have been covered by Ms. Hamilton's homeowners insurance or auto insurance? I don't believe it would. Typically not. Usually you have to have bodily injury, and this is not bodily injury. Just out of curiosity, it might be better probably to ask Ms. Rappos, but did any other board members' personal liability insurance pay for their defense here? I don't know the answer to that question and I don't believe it's in the record. My understanding is the consortium stepped in and paid all of the defense costs, advanced, as they would say, all of the defense costs, again, because they had significant risk, not just for the individual board members, but for the college as well. The allegations here were brought against the board members, against the board in the official capacity. So it was ultimately a loss that would have been borne by the college had liability been established. And here we have a settlement, and so there's no determination, no apportionment of the claims. And as this court recognized in the first indemnity decision from earlier this year, you can't break apart the allegations and the underlying claims to figure out whether there is a covered loss. The question is whether there is potential coverage for a loss, not potential coverage for a particular theory of liability or particular claim. Right. Okay. At bottom, Great American Fault State Farm for declining to take on a defense obligation that it never had in the first place. And we would request that the district court's judgment be affirmed. Thank you. Ms. Repes, your time has expired, but you can have some extra time. We kept you at the podium longer than you had anticipated. Thank you very much. I'll be brief. I wanted to address a couple of questions that the panel asked first, kind of like how do these risk pool members, how does it operate? So each member, each community college pays like what you consider like a premium to be a member of the risk pool, and all those premiums are pooled as the assets of the pool, which go to pay indemnified losses. Does the consortium actually issues a policy, or does it underwrite? It's a coverage agreement, but, yeah, essentially a policy. Okay. But it's not an insurance policy. It's an insurance policy. It is an insurance policy. Yeah, they're acting as an insurance. They're a sophisticated entity, and they draft these insurance policies specifically to accomplish the goals of the consortium. And the consortium writes their policy specifically not to provide for defense costs in the event of exoneration or no liability, because defense costs can be very costly. And oftentimes, you know, these claims come in against these public entity colleges, and they have qualified sovereign immunity, and they can get rid of a lot of those claims within their retention even. And this is, you know, this is not a dollar one obligation because, remember, the consortium policy sits over a retained limit. So the consortium itself has no first dollar obligation to do anything. And just another question that somebody had asked about, you know, what would happen, you know, did the members just pay for their own defense in the event that they're exonerated? That's exactly how the ultimate net loss definition works is that if the community college or the board member is ultimately found not liable, then they would be responsible for their own defense costs. In this case, it's, of course, the college who is fronting it, but that is still an obligation that the college or the board member would have to eat. And in this particular case, there was no other board member who had any other insurance potentially responsive to the loss. It was only Hamilton. And that's exactly why she tendered the claim to State Farm and said, hey, I want a defense. And State Farm said, well, you know, somebody else is involved, without really understanding that that involvement was a discretionary advance payment against ultimate indemnity and not a duty to defend. State Farm was the only entity here with a duty to defend. And so with that, I conclude in asking this court to respectfully request that the court reverse the judgment below and find that State Farm alone owed and breached a duty to defend, is a stop from raising any coverage defenses, and to reverse and remand for further proceedings. Thank you very much. Thank you. Our thanks to all counsel. The case is taken under advisement.